# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

THOMAS BENFORD,

      Plaintiff,

v.                                                                Case No. 8:25-cv-3425-KKM-LSG

TROY TAYLOR et al.,

      Defendants.

_____

## <u>ORDER</u>

Thomas Benford sues Troy Taylor, Cardinal System Holdings, LLC, Cardinal Intermediate Holdings, LLC, and Coca-Cola Beverages Florida, LLC (Coke Florida), alleging that the defendants breached their agreement to issue Benford equity in Coke Florida in exchange for Benford relocating to Florida and leading Coke Florida's acquisition of territories in the state. *See* Compl. (Doc. 1-1). The defendants move to dismiss each of Benford's claims as time barred, or in the alternative, to dismiss Benford's claims for an accounting and declaratory relief as improper and redundant. Mot. (Doc. 15); Reply (Doc. 32). Benford opposes. Resp. (Doc. 27). For the following reasons, I grant in part and deny in part the defendants' motion to dismiss.

## I.    BACKGROUND

Thomas Benford and Troy Taylor have known one another professionally for more than twenty-five years. Compl. ¶ 16. In 2010, Taylor "began pursuing an opportunity to acquire a [Florida] bottling territory from" the Coca-Cola Company, and recruited Benford to help him. *Id.* ¶¶ 16–18. In September 2014, Coca-Cola "announced a deal to sell its Central Florida bottling business to" Taylor's LLC, Cardinal Intermediate Holdings,[1] "with an exclusive license to market, sell, and distribute Coke products in the Central Florida territory." *Id.* ¶ 18. That month, "Taylor asked Benford to relocate to Tampa, Florida and lead the anticipated acquisitions of three territories" in exchange for an "eight percent (8%) non-voting interest in Coke Florida." *Id.* ¶ 19. Benford agreed and moved to Tampa in 2015, "where he successfully negotiated the acquisitions of three territories" on behalf of Coke Florida. *Id.* ¶ 19–20. Benford completed the final acquisition of the South Florida territory in 2017. *Id.* ¶ 2.

Despite performing his end of the agreement, Benford alleges that "Taylor did not perform" and "strung Benford along for years." *Id.* ¶ 3. As early as November 2015, Taylor presented Benford a revised equity agreement that

---

[1] Cardinal Intermediate Holdings is the sole member of Coke Florida. Compl. ¶ 15; *see* Not. of Removal (Doc. 1) at 4–5. Cardinal Intermediate is owned by Taylor through Cardinal System Holdings, which is in turn owned and managed by Taylor. Compl. ¶ 15. Collectively, "Cardinal, Cardinal Intermediate and Coke Florida constitute the 'Coke Florida Enterprise' over which Taylor exercises complete control." *Id.*

"included new, self-serving provisions—giving Taylor the unilateral power to value the interest and imposing a mandatory service of up to fifteen years that had never been discussed." *Id.* ¶ 21. Benford objected to the new terms, "but at all times maintained his agreement to the core economic terms the parties had reached" in 2014. *Id.*

From then on, "[a] pattern of deferral and delay became Taylor's modus operandi." *Id.* ¶ 22. In 2017—the same year that Benford completed the final territory acquisition—Taylor changed the entity employing Benford to Cardinal Management Services, purportedly "to facilitate the issuance of the 8% interest in Coke Florida." *Id.* Although Taylor reassured Benford "that outside counsel was drafting documents to issue the promised units," in 2018 Taylor told Benford that he could not issue shares because a terminated Coke Florida employee sued over his own equity agreement. *Id.* ¶¶ 23–24. Nonetheless, Benford continued working for Coke Florida, eventually becoming its President and Chief Operations Officer. *Id.* ¶ 25. Over a six-year period of growth for Coke Florida, "Benford delivered on every promise—yet Taylor refuse[d] to deliver on his." *Id.* ¶ 26.

In early 2022, Taylor transferred Benford's employment back to Coke Florida, but "reassured Benford that the transition was a formality . . . [and] would not in any way impact Benford's interest." *Id.* ¶ 27. Nine months later, "Taylor purported to calculate amounts owed to Benford for his 8% interest in

Coke Florida through 2020," ultimately paying Benford $5 million in recognition of his interest. *Id.* ¶ 28. After making the cash payment, in 2024 Taylor "attempted to rewrite the agreement" into a capped long-term incentive structure contingent upon "discretionary and subjective performance metrics." *Id.* ¶ 29. Benford rejected the proposal and told Taylor he planned to leave Coke Florida by the end of 2025. *Id.* ¶¶ 29–31. In July 2025, Taylor terminated Benford's employment with Coke Florida. *Id.* ¶ 32. Benford did not receive any membership units. *Id.*

In November 2025, Benford sued Taylor, Cardinal Intermediate, Cardinal System, and Coke Florida in the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida, Complex Business Litigation Division. *See* Compl. Benford brings claims against Taylor and Cardinal System for breach of contract, breach of implied contract, and promissory estoppel, *id.* ¶¶ 34–50, and claims for quantum meruit, unjust enrichment, accounting, and declaratory relief against all four defendants, *id.* ¶¶ 51–66. Benford seeks damages and "equitable relief including specific performance [and] accounting." *Id.* at 12 (Prayer for Relief).

The defendants timely removed to this Court and move to dismiss all claims as either time barred or inadequately pleaded.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

"To survive a motion to dismiss" under Rule 12(b)(6), a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A claim is facially plausible when a "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The complaint's factual allegations are accepted "as true" and construed "in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

### III.  ANALYSIS

The defendants move to dismiss the whole of Benford's claims as barred by Florida's relevant statutes of limitations. According to the defendants, each claim "concerns an alleged agreement formed in 2014, the material portions of which were completed in 2017—eight years ago" and "far outside the prescribed statute of limitations." Mot. at 6–7. The defendants also move to dismiss Benford's accounting claim because an accounting is a remedy, not an independent cause of action, and "because Benford fails to plausibly allege either a sufficiently complicated transaction or a fiduciary relationship." *Id.* at 13. Finally, the defendants move to dismiss Benford's claim for declaratory relief "as it is duplicative of his other claims." *Id.* at 16. I address each argument in turn.

### A. Statute of Limitations

Although the statute of limitations is generally an affirmative defense, "a party can raise a statute of limitations defense in a motion to dismiss if that defense appears on the face of the complaint." *Swedberg v. Goldfinger's S., Inc.*, 338 So. 3d 332, 334–35 (Fla. 3d DCA 2022) (quoting *Nationstar Mortg., LLC v. Sunderman*, 201 So. 3d 139, 140 (Fla. 3d DCA 2015)). In other words, a motion to dismiss on statute-of-limitations grounds may only be granted "where the facts constituting the defense affirmatively appear on the face of the complaint and establish conclusively that the statute of limitations bars the action as a

6

matter of law." *Aquatic Plant Mgmt., Inc. v. Paramount Eng'g, Inc.*, 977 So. 2d 600, 604 (Fla. 4th DCA 2007) (citation modified).

1. **Counts I and II: Breach of Contract and Breach of Implied Contract**

Under Florida law, a plaintiff must bring a claim for breach of an oral contract within four years. § 95.11(3)(j), Fla. Stat. The limitation period drops to one year if the plaintiff seeks "specific performance of a contract." *Id.* § 95.11(6)(a). Where, as here, a claim seeks damages and specific performance in the alternative, the legal damages claim survives so long as it was timely brought within the four-year limitations period. *See AFFCO New Zealand, Ltd. v. Am. Fine Foods Corp.*, 913 F. Supp. 2d 1331, 1336–38 (S.D. Fla. 2012).

The statute of limitations for contract actions begins to run "when the last element constituting the cause of action occurs." § 95.031(1), Fla. Stat. A cause of action for breach of an express or implied contract requires a "(1) a valid contract; (2) a material breach; and (3) damages." *Carl Domino, Inc. v. Dixon*, 413 So. 3d 157, 167 (Fla. 4th DCA 2025) (citation modified). "Florida case law consistently holds that a cause of action for breach of contract accrues and the limitations period commences at the time of the breach." *Clark v. Estate of Elrod*, 61 So. 3d 416, 418 (Fla. 2d DCA 2011) (quoting *Tech. Packaging, Inc. v. Hanchett*, 992 So. 2d 309, 313 (Fla. 2d DCA 2008)).

The parties here seem to agree that Benford's complaint alleges that the defendants failed to perform under the agreement. *See, e.g.*, Compl. ¶ 32 ("To this day, and in violation of their agreement, Taylor has never issued any membership units in Coke Florida."). But the parties disagree about *when* the breach occurred, and thus, when the limitations period commenced. In Benford's telling, the complaint does not establish that by November 2021—four years before suit—"either (1) the time for Defendants' performance had lapsed, or (2) Defendants had repudiated the contract."[2] Resp. at 7. Conversely, the defendants contend that their breach occurred no later than 2018, when "Taylor refused to issue Benford the shares that would have been due at that time." Mot. at 8 (citing Compl. ¶ 24).

At this stage, and construing all inferences in Benford's favor, I agree with Benford that his complaint does not allege when the defendants were obligated to perform under the contract. Benford describes only that "Taylor promised Benford an eight percent (8%) non-voting interest in Coke Florida" in exchange for Benford relocating to Tampa and "lead[ing] the anticipated acquisitions of three territories." Compl. ¶ 19. Benford does not allege that the defendants had to issue his equity shares immediately upon Benford's

---

[2] A party may anticipatorily announce its intention not to perform and trigger the statute of limitations period. *See Hosp. Mortg. Group v. First Prudential Dev. Corp.*, 411 So. 2d 181, 182 (Fla. 1982).

performance, or by some other date. *See id.* Simply put, no time for performance appears on the face of the complaint.

That limitation does not end the inquiry, though. Under Florida law, "[i]f a contract fails to specify a time for performance, then the law infers it will take place within a reasonable time." *Hicks v. Keebler*, 312 So. 3d 1001, 1005 (Fla. 2d DCA 2021) (citing *Patrick v. Kirkland*, 43 So. 969, 971 (Fla. 1907)). Courts consider numerous factors to "determin[e] what constitutes a reasonable time, includ[ing] the contract's subject matter, the parties' situation, the parties' intentions, and the circumstances of performance." *Hicks*, 312 So. 3d at 1005 (citing *Sound City, Inc. v. Kessler*, 316 So. 2d 315, 317 (Fla. 1st DCA 1975)). Ordinarily, "[w]hat constitutes a reasonable time under these circumstances is a question for the jury." *Smith v. Legacy Yachts, Inc.*, 2010 WL 2366555, at *2 (M.D. Fla. June 11, 2010); *see United States v. David Boland, Inc.*, 2006 WL 2683304, at *4 (M.D. Fla. Sept. 18, 2006) ("[T]he question of what constitutes a reasonable time is generally a question of fact contingent on an analysis of a variety of factors; one party's interpretation of what is reasonable under the circumstances is not controlling.").

The defendants do not contest the potentially fact-intensive nature of the inquiry. Instead, the defendants point to *Hill v. Vetter*, in which a Florida court held that the "date of breach" was when the plaintiff requested payment of a debt and the defendant denied owing it. 231 So. 2d 286, 288 (Fla. 2d DCA 1970)

(explaining that "the plaintiff himself must have considered the obligation as being due . . . else he would have requested payment"); *see* Reply at 4–5. According to the defendants, then, "Benford should not now be permitted to argue that performance never came due, when it is apparent by the behavior as alleged in his own Complaint, that he believed otherwise." Reply at 5. Benford's complaint alleges a different fact pattern than that in *Hill*. Benford suggests that he inquired about payment as early as 2017, but that "[a] pattern of deferral and delay became Taylor's modus operandi." Compl. ¶ 22. Instead of outright denying Benford's demand like the *Hill* defendant, "[f]or years, Taylor strung Benford along, repeatedly assuring him that the deal remained as promised." *Id.; see* Resp. at 10 (claiming that "Defendants' reassurances and partial performance . . . [were] fundamentally inconsistent with anticipatory repudiation . . . before November 2021").

The conduct Benford alleges suffices for a defense of equitable estoppel, which has "been recognized as a valid defense to a limitations-period defense." *Ryan v. Lobo De Gonzalez*, 841 So. 2d 510, 518 (Fla. 4th DCA 2003) (citation modified). "Equitable estoppel arises where the parties recognize the basis for suit, but the wrongdoer prevails upon the other to forego enforcing his right until the statutory time has lapsed." *Id.* (citation modified); *see Fox v. City of Pompano Beach*, 984 So. 2d 664, 668 (Fla. 4th DCA 2008) ("[A]n equitable estoppel claim raised in response to a statute of limitations defense must allege

10

that the defendant acted with an intent to mislead or deceive the plaintiff into filing late, and that the plaintiff's failure to timely file is directly attributable to the defendant's misconduct."); *see also Acoustic Innovations, Inc. v. Schafer*, 976 So. 2d 1139, 1143–44 (Fla. 4th DCA 2008) (concluding that the defendant was equitably estopped from asserting the defense where his "words and actions repeatedly assured [the plaintiff] that [the defendant] would honor their agreement" to issue shares of equity). In such a case, the limitations period does not trigger until the "point that [the defendant] made it clear to [the plaintiff] that he did not intend to honor their original oral agreement." *Schafer*, 976 So. 2d at 1144.

Here, Benford sufficiently alleges that he relied on the defendants' representations that they would perform, at least until November 2022. For example, Taylor told Benford that "outside counsel was drafting documents," and later that Taylor "could not issue the units because he had been sued by [a former Coke Florida employee] in connection with [the former employee's] equity agreement." *Id.* ¶¶ 23–24. "Taylor explained that he needed to resolve the dispute . . . before he could issue Benford's units." *Id.* ¶ 24. Benford alleges that Taylor continued the pattern of delay through 2022, when Taylor "unilaterally transferred" Benford's employing entity but "reassured Benford that the transition was a formality" that would not impact Benford's forthcoming equity distribution. *Id.* ¶ 27. Then, in November 2022, Taylor

11

made a partial payment of $5 million to Benford "in recognition of the 8% interest," all while "represent[ing] that outside counsel was working on it." *Id.* ¶ 28. At no point before then did the defendants "ma[k]e it clear . . . that [they] did not intend to honor their original oral agreement."[3] *Schafer*, 976 So. 2d at 1144. Accordingly, Benford sufficiently alleges that—even if it would have been reasonable for the defendants to perform by 2018—the defendants should be equitably estopped from asserting a four-year statute of limitations defense.

### 2. Specific Performance

Although Benford sufficiently alleges that the defendants should be estopped based on their conduct through November 2022, the complaint fails to allege similar conduct running through November 2024, the cutoff date for Benford's claim for specific performance. *See* § 95.11(6)(a), Fla. Stat.; *see also Melbourne Ocean Club Condo. Ass'n, Inc. v. Elledge*, 71 So. 3d 144, 146 (Fla. 5th DCA 2011) (holding that enforcement of an "affirmative" contractual obligation "that something has been or will be done" is subject to a one-year

---

[3] The defendants argue that "Benford became aware Defendants did not intend to honor the alleged oral agreement nearly immediately, as one year after the agreement was allegedly formed, 'Taylor presented Benford with documentation that included the material terms of the deal' but 'included new, self-serving provisions— giving Taylor unilateral power to value the interest and imposing a mandatory service period of up to fifteen years that had never been discussed.'" Reply at 6 (citing Compl. ¶ 21). But "Benford objected" to the new terms, and his remaining allegations assume "agreement to the core economic terms the parties had reached." Compl. ¶ 21. I cannot conclude that Benford, at that early stage, should have known the defendants intended not to perform.

statute of limitations). Because Benford seeks a declaration establishing his equity stake in Coke Florida and directing the defendants to issue his shares, *see* Compl. ¶ 66, that claim is subject to the one-year limitations period, *see Ranucci v. City of Palmetto*, 317 So. 3d 270, 275 (Fla. 2d DCA 2021).

Here, Benford claims that he received "partial performance" under the contract in November 2022 when the defendants paid him $5 million and represented that outside counsel continued to work on the equity distribution. Resp. at 10–12. But he does not allege further conduct by the defendants until May 2024, when "Taylor attempted to rewrite the agreement" and change Benford's interest into a "long term incentive structure" capped at a "total payout of $10 million." Compl. ¶ 29. Although Benford alleges that he "rejected the proposal as . . . a fundamental departure from the parties' agreement," *id.*, Benford does not allege that Taylor did or said anything that would have led Benford to believe the initial agreement remained intact, much less that "the defendant[s] acted with an intent to mislead or deceive [Benford] into filing late," *Fox*, 984 So. 2d at 668. At that point, Taylor "made it clear to [Benford] that he did not intend to honor their original oral agreement." *Schafer*, 976 So. 2d at 1144. In fact, and without explanation as to why, a month later Benford told Taylor he intended to depart Coke Florida. Compl. ¶ 30. It was not until June 2025 that Taylor again suggested to Benford that the defendants planned to honor the 2014 equity agreement, when Taylor provided Benford a "Service

13

Award and Release" that would have waived Benford's claims against Coke Florida. *Id.* ¶ 31. At that point in June 2025, the one-year limitations period had already run on Benford's claim for specific performance. Insofar as Benford's claims seek an award of specific performance, they are dismissed.

### 3. Counts III, IV, and V: Promissory Estoppel, Quantum Meruit, and Unjust Enrichment

Benford's claims for promissory estoppel, quantum meruit, and unjust enrichment are alternative theories for Benford to recover his reasonable expectation of equity "[e]ven if there were no formal contract" between the parties. Compl. ¶¶ 47, 54–56, 58–60. All three claims are subject to four-year statutes of limitations under Florida law. *See* § 95.11(3)(j), Fla. Stat (setting the limitations period for "[a] legal or equitable action on a contract, obligation, or liability not founded on a written instrument"); *see also Merle Wood & Assocs., Inc. v. Trinity Yachts, LLC*, 714 F.3d 1234, 1236 n.3 (11th Cir. 2013) (applying four-year limitations period for unjust enrichment and quantum meruit claims, which likewise share the same elements as one another).

Although the analysis for Benford's promissory estoppel claim "is identical to the analysis . . . regarding the breach of contract claim," *Servicios De Almacen Fiscal Zona Franca Y Mandatos S.A. v. Ryder Int'l, Inc.*, 264 F. App'x 878, 881 (11th Cir. 2008) (per curiam), Benford's unjust enrichment and quantum meruit claims differ slightly. To state either claim, a plaintiff must

plead that "(1) [he] conferred a benefit on the defendant, who has knowledge of that benefit; (2) the defendant accepts and retains the conferred benefit; and (3) under the circumstances it would be inequitable for the defendant to retain the benefit without paying for it." *N.G.L. Travel Assocs. v. Celebrity Cruises, Inc.*, 764 So. 2d 672, 675 n.5 (Fla. 3d DCA 2000) (citation modified). "The statute of limitations for an unjust enrichment claim begins to run at the time the alleged benefit is conferred and received by the defendant." *Flatirons Bank v. Alan W. Steinberg Ltd. P'ship*, 233 So. 3d 1207, 1213 (Fla. 3d DCA 2017).

As the defendants argue, "the relevant 'benefit' [conferred by Benford] is his labor in the expansion, acquisition, and operation of the Coke Florida bottling operation." Mot. at 11 (citing Compl. ¶ 58 (alleging the same set of benefits)). Benford conferred that core benefit on the defendants by 2018 at the latest, and thus his claims for unjust enrichment and quantum meruit accrued at that time. Unlike with the contract claims, then, Benford does not dispute that the limitations period for the equitable claims began to run over four years ago.

Despite the different result at the first-stage analysis, "equitable estoppel can apply even where the statute of limitations has already run." *Iemma v. Heichberger*, 355 So. 3d 415, 417 (Fla. 4th DCA 2022). And Florida courts have equitably estopped defendants from asserting statute of limitations defenses against equitable claims. *See, e.g., Schafer*, 976 So. 2d at

15

1142–44 (estopping defendants from asserting limitations defense against a claim for an equitable accounting and involuntary dissolution). The defendants do not explain why equitable estoppel should not apply as it would to Benford's contract claims. As with the legal claims—which relate to Benford's "bargained-for 8% interest" in Coke Florida—the complaint does not allege that the defendants denied Benford's demand for compensation. To the contrary, the defendants (namely Taylor) "repeatedly affirm[ed] Benford's interest," "reassuring Benford that Taylor had lawyers working to formalize and issue units to Benford for his interest." Compl. ¶ 3. Accepting those allegations as true and construing inferences in Benford's favor, until at least November 2022, Benford relied on those reassurances to his detriment, and the defendants are estopped from succeeding on a statute-of-limitations argument at the pleading stage. The defendants are not precluded from raising a statute-of-limitations defense at summary judgment.

### B. Count VI: Accounting

The defendants next argue that Benford's accounting claim must be dismissed because an accounting is a remedy, not a cause of action. Mot. at 13. Further, the defendants aver that Benford should not be permitted to seek an accounting remedy because he fails to plead either the existence of a fiduciary duty or a sufficiently complicated transaction. *Id.* at 14–15. Benford responds that the labeling of his claim is not dispositive, and in any event, the

16

defendants "cannot strike a remedy at the pleading stage because Rule 12(b)(6) addresses claims, not forms of relief." Resp. at 17–18.

On the defendants' first point, the Eleventh Circuit has noted that "an accounting is best understood as a *remedy* for a cause of action, not as a cause of action in its own right." *Zaki Kulaibee Establishment v. McFliker*, 771 F.3d 1301, 1310 n.21 (11th Cir. 2014); *see Becker v. Davis*, 491 F.3d 1292, 1305 (11th Cir. 2007) ("An accounting is a remedy attached to a separate independent cause of action."), *abrogated on other grounds by Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009). On the other hand, Florida courts have allowed stand-alone accounting actions to proceed. *See, e.g.*, *Cassedy v. Alland Invs. Corp.*, 128 So. 3d 976, 978 (Fla. 1st DCA 2014) ("[A]n action for an accounting is a separate and distinct cause of action that may be available where a fiduciary duty exists."). Because Benford pleads other causes of action that could support an accounting remedy, I do not dismiss his claim for potentially being mislabeled. *Cf. 600 Cleveland, LLC v. Bank of Am., N.A.*, No. 8:24-CV-1652-KKM-AAS, 2025 WL 1222444, at *4 n.2 (M.D. Fla. Apr. 28, 2025) (assuming that the plaintiff "may plead accounting as an independent cause of action"); *Schmidt v. Wells Fargo Bank, N.A.*, No. 8:20-CV-150-T-33AAS, 2020 WL 758161, at *5 (M.D. Fla. Feb. 14, 2020) (same).

"To obtain an accounting under Florida law . . . a party must show either (1) a sufficiently complicated transaction and an inadequate remedy at law or

17

(2) the existence of a fiduciary relationship." *McFliker*, 771 F.3d at 1311. On complexity, Florida law requires that "a plaintiff demonstrate the accounts at issue are so complicated that a jury would not be able to ascertain damages." *Managed Care Sols., Inc. v. Essent Healthcare, Inc.*, 694 F. Supp. 2d 1275, 1280 n.4 (S.D. Fla. 2010). Because the first prong requires that the plaintiff cannot obtain an adequate remedy at law, "[a]n equitable accounting claim cannot coexist with a breach of contract claim covering the same subject matter . . . because a plaintiff would be able to obtain the information and damages through discovery of her breach of contract claim and thus has an adequate remedy at law." *Bedoyan v. Samra*, 352 So. 3d 361, 365 n.5 (Fla. 3d DCA 2022) (citation modified).

Benford alleges that "[t]he complex financial structure of Coke Florida, Cardinal, and affiliated entities together with Taylor, Cardinal, Cardinal Intermediate, and Coke Florida's exclusive control of books and records, renders a full accounting necessary to ascertain all profits, distributions, and other value in which Benford has an interest." Compl. ¶ 62. These conclusory, unsupported allegations do not support that the Coke Florida enterprise is "sufficiently complicated" to support an equitable accounting claim, or to suggest that a jury could not calculate damages. *McFliker*, 771 F.3d at 1311; *Managed Care Sols.*, 694 F. Supp. 2d at 1280. At bottom, Benford's allegations do not resemble those in which courts have sustained accounting claims. *See,*

*e.g., Tracfone Wireless, Inc. v. Simply Wireless, Inc.*, 275 F. Supp. 3d 1332, 1344 (S.D. Fla. 2017) (denying a motion to dismiss an accounting claim when the transactions between the parties "involved hundreds of thousands of various PINs and TracFone devices"); *Blitz Telecom Consulting, LLC v. Peerless Network, Inc.*, 151 F. Supp. 3d 1294, 1307 (M.D. Fla. 2015) ("[A]n accurate calculation of the co-marketing fees [the defendant] allegedly owes would involve verifying call records for the traffic . . . placed on [the defendant's] network, reviewing 85,000 invoices (each of which is over 100 pages in length), and reconciling revenues [the defendant] refunded to certain companies that disputed whether they owed money to [the defendant] . . . ."). Benford does not explain that level of complexity in valuing his Coke Florida shares.

Even assuming Benford's vague allegations were sufficient to state a complicated transaction, Benford does not allege that he lacks an adequate legal remedy under the parties' oral contract, or that ordinary discovery processes would yield insufficient information to assess damages. *See McFliker*, 771 F.3d at 1311 ("Given the availability of the modern discovery regime, the need for discovery, standing alone, is no longer generally regarded as a sufficient ground for granting an accounting"); *see also Managed Care Sols.*, 694 F. Supp. 2d at 1281 (explaining that "[a]n equitable accounting is not a substitute for a motion to compel under FED. R. CIV. P. 37"). For an accounting, Benford seeks "production of all financial statements, valuation

19

reports, capital tables, and transaction documents from 2015 to present." Compl. ¶ 63. He provides no reason why he could not discover those financial records in pursuing his contract claims. Nor does he explain why a jury would be unable to calculate damages reflecting Benford's 8% equity interest. *See Bedoyan*, 352 So. 3d at 365 (explaining that the jury's damages award—based on an expert's calculation of the plaintiff's partnership share "to the penny"— provided an adequate legal remedy in multi-million-dollar statutory buyout claim). Accordingly, Benford's claim for an accounting (Count VI) is dismissed.

### C. Count VII: Declaratory Relief

Finally, and in the alternative, the defendants contend that Benford's claim for declaratory relief should be dismissed because it duplicates his other claims. *See* Mot. at 16–18. Benford responds that, unlike a retrospective damages award, declaratory relief "would clarify ongoing rights and obligations." Resp. at 13. Even were the claim not time barred, the defendants are right that it seeks relief theoretically available on the contract claims.

"Courts have broad discretion to decide whether to entertain a request for a declaratory judgment" and "frequently decline to entertain" them when the request "is redundant with an earlier claim." *RLI Ins. Co. v. Coastline Tile of Pinellas, LLC*, 591 F. Supp. 3d 1182, 1190 (M.D. Fla. 2022). Notably, a district court should dismiss a declaratory relief claim where it "will serve no useful purpose." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995). "One such

20

instance of no useful purpose arises where a declaratory relief claim mirrors a breach of contract claim." *Toms v. State Farm Life Ins. Co.*, No. 8:21-CV-0736-KKM-JSS, 2022 WL 2758212, at *4 (M.D. Fla. July 14, 2022) (collecting cases).

Benford's complaint is light on the specific relief he seeks for his breach of contract claims,[4] but he broadly requests compensatory and consequential damages and for the defendants to issue him equity in Coke Florida. Compl. at 8–9, 12; *see Farman v. Deutsche Bank Nat'l Tr. Co. as Tr. for Long Beach Mortg. Loan Tr. 2006–05*, 311 So. 3d 191, 195 (Fla. 2d DCA 2020) ("Remedies available for a breach of contract are damages, restitution, and specific performance."). As for declaratory relief, "Benford seeks a declaration that [he] owns an 8% non-voting membership interest in Coke Florida and that Taylor, Cardinal, Cardinal Intermediate, and Coke Florida must specifically perform by issuing the units and honoring distribution rights." Compl. ¶ 66; *see also* Resp. at 13 (explaining that "[t]he declaration relies on the Court's inherent authority to recognize Benford as equitable and beneficial owner of Coke Florida"). Because that same remedy—specific performance—would be available under Benford's

---

[4] Benford brings contract claims against only Taylor and Cardinal Systems. *See* Compl. ¶¶ 34–45. But Benford does not explain why an award of specific performance under the contract—even one against only Taylor and Cardinal Systems—would be insufficient to force the other two defendants to "perform by issuing the units and honoring distribution rights." *Id.* ¶ 66.

contract claims, I would exercise my discretion to dismiss the declaratory relief as redundant even if the claim were not barred by the statute of limitations.

## IV.   CONCLUSION

Benford brings legal and equitable claims arising from a contract dispute. The defendants allege that all claims are time-barred. I agree in part. The four-year statute of limitations does not bar Benford's contract claims (to the extent he seeks damages) because the defendants' time for performance is absent from the complaint, and factual questions remain regarding whether a reasonable time elapsed before the limitations period expired. In any event, the defendants are equitably estopped from asserting a limitations defense as to Benford's claims seeking damages as well as his unjust enrichment and quantum meruit claims. Benford's request for specific performance, however, is untimely and equitable estoppel does not apply. Finally, Benford fails to state a claim for an accounting, and his claim for declaratory relief duplicates his contract claims. Accordingly, the following is **ORDERED**:

1.   Defendants' Motion to Dismiss (Doc. 15) is **GRANTED IN PART AND DENIED IN PART.**

2.   Plaintiff's claims in Counts I–V of the Complaint (Doc. 1-1) are **DISMISSED** to the extent that those claims seek specific performance.

23

3.    Plaintiff's claims for an accounting and declaratory relief, Counts

VI and VII of the Complaint (Doc. 1-1), are **DISMISSED.**

4.    Defendants must file an answer to the remaining claims in the

Complaint no later than **March 26, 2026.**

**ORDERED** in Tampa, Florida, March 12, 2026.

*Kathryn Kimball Mizelle*

Kathryn Kimball Mizelle
United States District Judge

23